

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH D. McCANE, | ) |
| Plaintiff, | ) Civil Action No.: 05 C 5089 |
| v. | ) Suzanne B. Conlon, Judge |
| AMERICA'S CREDIT JEWELERS, INC., d/b/a THE DIAMOND CENTER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Kenneth D. McCane brings a putative class action against America's Credit Jewelers, Inc. ("ACJ"), doing business as The Diamond Center, alleging violations of the Fair Credit Reporting Act ("the FCRA"), 15 U.S.C. § 1681, *et seq.* Pursuant to Federal Rule of Civil Procedure 12(b)(6), ACJ moves to dismiss the complaint. For the reasons set forth below, the motion is granted in part.

## BACKGROUND

The following facts are drawn from the complaint. McCane is a consumer residing in Illinois. He never initiated any credit transactions with ACJ, a Delaware corporation with an office in Illinois. Nor did he authorize ACJ to access his credit report. But ACJ sent him a letter, offering a gold club card. Compl. Ex. A. According to the letter, ACJ pre-approved him for a $5,000 line of credit. To receive the card, he would need to show a valid identification and proof of income. The letter further stated:

> This offer is available to new customers who do not currently have an open credit line with The Diamond Center. You were selected to receive this offer because your consumer report from Equifax met our initial criteria. Final acceptance is subject to

ability to meet our full eligibility requirements. Annual percentage rate not to exceed 19.8%. If you wish to opt-out of future offers, please write Equifax Options, PO Box 740123, Atlanta, GA 30374-0123 or call 888-567-8688.

The letter provided no additional information about the card.

Based on this letter, McCane filed the present putative class action. His complaint alleges ACJ's letter violates two FCRA provisions: (1) 15 U.S.C. § 1681b(c)(1)(B)(i) by failing to make a firm offer of credit; and (2) 15 U.S.C. § 1681m(d) by failing to provide clear and conspicuous disclosures of consumers' rights to prevent further unsolicited use of their credit reports.

ACJ moves to dismiss solely on the ground that § 1681m provides no private right of action. McCane's § 1681b claims are unaffected by this motion.

## DISCUSSION

### I. Motion to Dismiss Standard

In ruling on a motion to dismiss, the court must accept well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). But a claim by an individual to enforce a federal statute must be dismissed if the underlying statute authorizes no private right of action. *See Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (*per curiam*).

## II. McCane's § 1681m Claims and ACJ's Motion

The FCRA aims to protect consumers' right to privacy. 15 U.S.C. § 1681(a)(4). Unless consumers initiate a transaction, their credit reports may be accessed only in limited situations set forth in § 1681b(c). One such situation is when a creditor extends a "firm offer of credit" to a consumer. 15 U.S.C. § 1681b(c)(1)(B)(i). In addition to satisfying the firm-offer requirement, a creditor must make "a clear and conspicuous statement" with the following details:

> (A) information contained in the consumer's consumer report was used in connection with the transaction;
>
> (B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness [*sic*] or insurability under which the consumer was selected for the offer;
>
> (C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness [*sic*] or insurability or does not furnish any required collateral;
>
> (D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer; and
>
> (E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system established under section 1681b(e) of this title.

15 U.S.C. § 1681m(d)(1). Under sections 1681n and 1681o, consumers may file civil actions for violations of certain FCRA provisions. McCane alleges ACJ violated both § 1681b and § 1681m.

ACJ argues that a private right of action to enforce § 1681m was repealed by the Fair and Accurate Credit Transactions Act of 2003 ("the FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (2003). Section 311(a) of the FACTA added subsection (h) to § 1681m. *See* Pub. L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89. Paragraph (8) of the amended § 1681m(h) reads:

ENFORCEMENT

(A) No civil actions
Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this *section.*

(B) Administrative enforcement
This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8) (emphasis added). Interpreting the term "section" in its plain meaning, ACJ concludes § 1681m(h)(8)(A) eliminates the private right of action under the entire section; as a result, McCane cannot sue for alleged § 1681m violations. The court agrees with ACJ's interpretation.

### III. Interpretation of the Term "Section" in § 1681m(h)(8)(A)

The first canon of statutory interpretation requires the court to look to the language of the statute. *United States v. Miscellaneous Firearms*, 376 F.3d 709, 712 (7th Cir. 2004). When interpreting statutory language, the court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). If statutory language is unambiguous, "then, this first canon is also the last: 'judicial inquiry is complete, except in rare and exceptional circumstances.'" *Rubin v. United States*, 449 U.S. 424, 430 (1981) (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 187 n.33 (1978)). Accordingly, the court may look beyond a statute's express language to effectuate Congressional intent only in two situations: (1) where the statutory language is ambiguous; and (2) where a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd result. *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978).

4

The term "section" in § 1681m(h)(8)(A) is unambiguous. As the Supreme Court stated in *Koons Buick Pontiac GMC, Inc. v. Nigh*, "Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections." 125 S. Ct. 460, 467 (2004). According to the hierarchical scheme, each statutory section, such as § 1681m, is divided into: subsections (starting with (a)), paragraphs (starting with (1)), subparagraphs (starting with (A)), and clauses (starting with (i)). *Id.* This is precisely the scheme Congress used to draft both the FCRA and the FACTA. The newly-added subsection (h) demonstrates that Congress carefully identified the various parts of § 1681m by using the terms "section," "subsection," and "paragraph":

> (h) Duties of users in certain credit transactions
>
>> (1) In general
>> Subject to rules prescribed as provided in *paragraph (6)*, if any person uses a consumer report in connection with an application . . ., the person shall provide an oral, written, or electronic notice to the consumer in the form and manner required by regulations prescribed in accordance with *this subsection*.
>> . . .
>> (3) Exceptions
>> No notice shall be required from a person under *this subsection* if –
>>> (A) the consumer applied for specific material terms and was granted those terms . . .; or
>>> (B) the person has provided or will provide a notice to the consumer under *subsection (a)* of *this section* in connection with the transaction.
>>
>> . . .
>> (8) Enforcement
>>> (A) No civil actions
>>> Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with *this section*.
>>> (B) Administrative enforcement
>>> *This section* shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in *that section*.

15 U.S.C. § 1681m(h) (emphasis added). Other parts of § 1681m also show the use of the hierarchical scheme. *See* 15 U.S.C. § 1681m(d)(4) (referring to § 1681m as "[t]his section"); 15

5

U.S.C. § 1681m(f)(2) (referring to § 1681m(f) as "this subsection" and to § 1681m(f)(1) as "paragraph 1"); 15 U.S.C. § 1681m(b)(2)(A) (referring to § 1681m(b)(2)(B) as "subparagraph B"). These clear references to "section" and "subsection" compel the conclusion that the term "section" in 15 U.S.C. § 1681m(h)(8)(A) refers to § 1681m in its entirety; as a result, private right of action under § 1681m is repealed.

This plain reading of § 1681m(h)(8)(A) does not lead to an absurd result, nor does it thwart the overall statutory scheme. It is true that Congress enacted the FCRA to protect consumers' privacy rights. *See* 15 U.S.C. § 1681(a)(4). But the repeal of a private right of action under § 1681m does not thwart this purpose because the newly-added § 1681m(h) grants enforcement authority to federal agencies. *See* 15 U.S.C. § 1681m(h)(8)(B). Congress is free to design enforcement schemes as it sees fit. And the court is not at liberty to second-guess Congress' judgments. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002) (judicial decisions should not "undermine the detailed enforcement scheme created by Congress"). Moreover, other FACTA provisions limit civil liabilities under the FCRA. *See, e.g.*, Pub. L. No. 108-159, § 312(e)(1), 117 Stat. 1952, 1989-93 (barring private right of action under subsections (a) and (e) of § 1681s-2). For example, § 151(a)(1) of the FACTA adds subsections (d) and (e) to § 1681g. Pub. L. No. 108-159, § 151(a), 117 Stat. 1952, 1961-64. The amended § 1681g(e)(6) bars private lawsuits under "*this subsection.*" 15 U.S.C. § 1681g(e)(6) (emphasis added). In addition to demonstrating that the FACTA limits private right of action, this clear reference to "subsection" in § 1681g(e)(6) suggests that if Congress intended § 1681m(h)(8)(A) to cover only § 1681m(h), it would have used the term "subsection" there. Because the plain reading of § 1681m(h)(8)(A) is consistent with the statutory scheme, the court's inquiry must stop at interpreting statutory language. *Rubin*, 449 U.S. at 430. The plain reading of §

1681m(h)(8)(A) indicates that a private right of action is no longer available under § 1681m. Therefore, McCane's § 1681m claims must be dismissed.

IV. McCane's Arguments

McCane argues for interpreting the term "section" in § 1681m(h)(8)(A) to refer only to the newly-added subsection (h). His arguments can be summed up in four prongs:

(1) the location of the statutory language repealing a private right of action creates ambiguity;
(2) "section" is an ambiguous term;
(3) interpreting "section" to mean § 1681m renders several other FCRA provisions superfluous; and
(4) interpreting § 1681m(h)(8)(A) to repeal a private right of action contradicts both Congressional intent and legislative history.

In several unrelated cases, this court has rejected similar arguments. *See Murray v. Cingular Wireless II, LLC*, No. 05C1334, Dkt. No. 51 (N.D. Ill. Nov. 2, 2005) (Judge Manning); *Pietras v. Curfin Oldsmobile, Inc.*, No. 05C4624, 2005 WL 2897386, at *4 (N.D. Ill. Nov. 1, 2005) (Judge Conlon); *Perry v. First Nat'l Bank*, No. 05C1470, 2005 U.S. Dist. LEXIS 23100, at *3 (N.D. Ill. Sept. 13, 2005) (Judge Gettleman); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 999 (N.D. Ill. 2005) (Judge Gettleman); *Murray v. Cross Country Bank*, No. 05C1252, 2005 WL 2644961, at *1 (N.D. Ill. Aug. 15, 2005) (Judge Zagel). Nonetheless, the court carefully considers McCane's arguments and finds them unpersuasive.

A. Location of the Statutory Language

McCane points to the location of the "[n]o civil action" provision – buried in subparagraph (8)(A) of subsection (h). 15 U.S.C. § 1681m(h)(8)(A). He asserts that if Congress meant to repeal

the private right of action for the entire § 1681m, it would have designated a separate subsection (i) for this purpose. The illogical location of the statutory language, he concludes, makes the term "section" ambiguous. The location of the statutory language, however, says nothing about the meaning of the term "section." No rule of statutory interpretation requires the court to ignore an unambiguous term in favor of an inference based on the term's location.

Citing *Bailey v. United States*, 516 U.S. 137 (1995), McCane argues that the location of the statutory language indicates that it is intended to modify only subsection (h). It is true that *Bailey* requires courts to interpret statutory language according to "its placement and purpose in the statutory scheme." *Id.* at 143. But the inference the *Bailey* court drew from the location of statutory language is different from the one McCane suggests here. In *Bailey*, the Supreme Court interpreted the term "use" in 18 U.S.C. § 924(c)(1), which imposes a five-year prison term upon a person who "uses or carries a firearm" while trafficking drugs. *Id.* at 139. Because "uses" is located near "carries," the Court inferred that each term must "have a particular, nonsuperfluous meaning." *Id.* at 147. While drawing the inference to differentiate between "uses" and "carries" is appropriate, twisting the term "section" in § 1681m(h)(8)(A) to mean "subsection" is not. The meaning of "section" does not shrink simply because it is placed in a subparagraph. Thus, McCane's reliance on *Baily* is inapposite.

McCane's argument based on *Koons* fares no better. In *Koons*, the Supreme Court analyzed whether a newly-added clause to a subparagraph in the Truth in Lending Act ("the TILA") affected the meaning of the rest of the subparagraph. *Koons Buick Pontiac GMC, Inc.*, 125 S. Ct. at 466. Holding that the subparagraph remained unaffected, the majority opinion turned not on the location

8

of the statutory language, but on the plain meaning of "subparagraph" under the hierarchical scheme. *See id.* at 467-68. Thus, *Koons* offers McCane no aid.

McCane also cites two cases from other jurisdictions: *Hecla Mining Co. v. United States*, 909 F.2d 1371 (10th Cir. 1990), and *Rump v. Aetna Casualty & Surety Co.*, 710 A.2d 1093 (Pa. 1998). These cases are not binding on this court, nor do they support his argument. In *Hecla*, the Tenth Circuit analyzed whether a federal agency's interpretation of a statute was reasonable. *Hecla Mining Co.*, 909 F.2d at 1376. Upholding the agency's interpretation, the Tenth Circuit held the location of the statutory language created an ambiguity. *Id.* at 1377. But this holding does not require courts to find ambiguity in every imperfectly-placed statutory provision. As discussed above, both the plain language of § 1681m(h)(8)(A) and the clear use of the hierarchical scheme preclude a finding of ambiguity. Thus, *Hecla* is inapplicable.

McCane's reliance on *Rump* is also misplaced. In *Rump*, the Supreme Court of Pennsylvania held that the term "paragraph" in an insurance statute referred to the entire paragraph. *Rump*, 710 A.2d at 1096. In reaching its conclusion, *Rump* adhered to the plain meaning of "paragraph" and the hierarchical scheme, but offered no discussion on the location of the term in question. *See id.* Therefore, *Rump* weakens, rather than supports, McCane's argument. *See id.* ("determination of this issue centers on an analysis of the controlling statutory language").

McCane asserts that in its prior decisions, the court failed to consider the impact of the location of statutory language. Pl. Mem. 7. This is not true. *Pietras* carefully considered similar arguments on the location of the statutory language. *See Pietras*, 2005 WL 2897386, at *5. The court held that "the allegedly illogical location of the elimination language does not justify departure from giving the statutory language its plain meaning." *Id.*

9

## B. "Section" as an Ambiguous Term

McCane asserts that "section" has been used to refer to paragraphs or subparagraphs in Black's Law Dictionary and case law. He concludes that "section" must be ambiguous in the FCRA. His conclusion is flawed because the meaning of "section" in other contexts has no bearing on whether the term "section" in the FCRA is ambiguous. The court must interpret "section" in the context of the FCRA. *See Bailey*, 516 U.S. at 145 ("'the meaning of statutory language, plain or not, depends on context'" (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). What "section" means in other contexts cannot control the court's interpretation here.

McCane also asserts that the issue before the court is similar to that in *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 125 S. Ct. 2444 (2005). This assertion is incorrect. In *Graham County*, the Supreme Court decided whether the limitations period in § 3731(b) of the False Claims Act applied to actions under § 3730(h). *Id.* at 2447. Section 3730 sets forth the enforcement scheme for § 3729 violations – making false claims for payments to the United States; under § 3730(h), employees who assist in investigations of suspected violations by their employers may sue for retaliation resulting from their assistance. 31 U.S.C. § 3730. Section 3731(b) prescribes the limitations period: "(b) A civil action under *section 3730* may not be brought – (1) more than 6 years after the date on which the *violation of section 3729* is committed." 15 U.S.C. § 3731(b) (emphasis added). A plain reading indicates that a six-year limitations period applies to all § 3730 actions. But applying the onset date of § 3729 violations to § 3730(h) actions is impracticable because retaliation actions based on suspected violations often do not have onset dates. Given this problem, the Court found § 3731(b) ambiguous. *Graham County*, 125 S. Ct. at

2449. McCane fails to point to any similar problems that may result from the plain-meaning interpretation of the term "section" in § 1681m(h)(8)(A). Thus, the rationale in *Graham County* is inapplicable.

### C. Superfluous Provisions

McCane argues that interpreting "this section" to mean the entire § 1681m would render § 1681m(c), § 1681m(h)(7), and § 1681s-2(c) superfluous. The court is mindful of the canon preferring an interpretation that does not render statutory provisions superfluous. *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 587 (7th Cir. 2005). But this preference is not absolute. *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004) ("[s]urplusage does not always produce ambiguity"). In *Lamie*, the Supreme Court adopted a plain reading of a statute notwithstanding that it rendered a related provision superfluous:

> Where there are two ways to read the text – [the term in question] . . . is surplusage, in which case the text is plain; or [the term] is nonsurplusage . . ., in which case the text is ambiguous – applying the rule against surplusage is, absent other indications, inappropriate. We should prefer the plain meaning since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history.

*Id.*

The preference for avoiding surplusage must yield here because its application would lead to absurd results. If the court interpreted the term "section" in § 1681m(h)(8)(A) to mean "subsection," it must give the same meaning to other references to "this section" in § 1681m. Two of the references appear in § 1681m(c), which McCane seeks to save:

> (c) Reasonable procedures to assure compliance

11

> No person shall be held liable for any violation of *this section* if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of *this section*.

15 U.S.C. § 1681m(c) (emphasis added). Interpreting these two references to mean "this subsection" would make no sense because § 1681m(c) itself provides no rules for compliance or violation. Given this absurd result, the court cannot adopt McCane's suggestion just to give meaning to three superfluous provisions.

Superfluous provisions are not unusual. *See Germain*, 503 U.S. at 253 ("[r]edundancies across statutes are not unusual events in drafting"). McCane does not argue that these superfluous provisions lead to any confusion in interpreting the FCRA. Therefore, the court must adhere to the first canon of statutory interpretation and give the term "section" its plain meaning. *See Lamie*, 540 U.S. at 536.

### D. Congressional Intent and Legislative History

McCane argues that because FACTA's legislative history is silent about repealing a private right of action under § 1681m, Congress must not have meant to affect such a sweeping change. This argument has merit only if the statutory language is ambiguous. Not surprisingly, all four cases he cites in support of this argument involve ambiguous statutory language. *See Koons Buick Pontiac GMC, Inc.*, 125 S. Ct. at 463 ("[l]ess-than-meticulous drafting [of the TILA] . . . created an ambiguity"); *United States v. Turcotte*, 405 F.3d 515, 522 (7th Cir. 2005) (interpreting the ambiguous analogue provision in the Controlled Substances Act); *United States v. Hodge*, 321 F.3d 429, 437 (3d Cir. 2003) (same); *United States v. Vickery*, 199 F. Supp. 2d 1363, 1368 (N.D. Ga.

2002) (same). Because the term "section" in the FACTA is unambiguous, McCane's reliance on these cases is misplaced.

The Supreme Court has repeatedly held that the absence of legislative history is not a proper basis for ignoring the unambiguous statutory language chosen by Congress. *See, e.g., Morales v. TWA, Inc.*, 504 U.S. 374, 385 n.2 (1992) ("legislative history need not confirm the details of changes in the law effected by statutory language before we will interpret that language according to its natural meaning"). Where the term "section" is not ambiguous and its plain reading does not lead to an absurd result, the court must not resort to legislative history. *See Exxon Mobil Corp. v. Allapattah Servs, Inc.*, 125 S. Ct. 2611, 2626 (2005) ("the authoritative statement is the statutory text, not the legislative history or any other extrinsic material").

McCane decries the loss of "an important right of action" resulting from a plain-meaning interpretation of § 1681m(h)(8)(A). Pl. Mem. 3, 11. But the court cannot "soften the import of Congress' chosen words even if . . . the words lead to a harsh outcome." *Lamie*, 540 U.S. at 538. In *Lamie*, the Supreme Court interpreted a Bankruptcy Code provision that contained an "apparent legislative drafting error." *Lamie*, 540 U.S. at 530. The provision was "awkward, and even ungrammatical." *Id.* at 534. The Court nonetheless interpreted the provision in its plain meaning and refused to inquire into legislative history. *Id.* at 542 ("[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent"). Section 1681m(h)(8)(A) contains no drafting error; the court must, *a fortiori*, give this subparagraph its plain meaning. *See id.* Without a private right of action, McCane can still seek redress for § 1681m violations through federal agencies. This result is neither harsh nor unjust. Accordingly, his arguments on Congressional intent and legislative history must fail.

## CONCLUSION

For the reasons set forth above, ACJ's motion is granted in part. McCane's § 1681m claims are dismissed with prejudice.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 1, 2005